Minute Order Form (06/98)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5578 | **DATE** | 2/20/2002 |
| **CASE TITLE** | Annie L. Davis vs. JoAnne Barnhart, Commissioner | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion to alter or amend is granted to the extent that the court will amend its opinion. Enter Amended Memorandum Opinion and Order. Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. Judgment is hereby entered in favor of the defendant and against the plaintiff. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 22 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 19 |
| ✓ | Mail AO 450 form. | | CM docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| RO | courtroom deputy's initials | 02 FEB 21 PM 3:42 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
FEB 22 2002

| | |
|---|---|
| ANNIE L. DAVIS, | ) |
| Plaintiff, | ) No. 01 C 5578 |
| v. | ) Judge Ruben Castillo |
| JO ANNE BARNHART, Commissioner of Social Security,[1] | ) |
| Defendant. | ) |

## AMENDED
## MEMORANDUM OPINION AND ORDER

Plaintiff Annie L. Davis seeks judicial review of the final decision of the Commissioner of Social Security, Jo Anne Barnhart, denying her applications for widow's insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. §§ 402, 423 and 1381 *et seq*. Davis claims that the Commissioner's decision to deny her benefits should be reversed or remanded for a new hearing because it was not supported by substantial evidence and because the ALJ and the Appeals Council erred as a matter of law. Both parties now move for summary judgment. (R. 11; R. 12.) For the reasons stated herein, we affirm the Commissioner's decision, deny Davis' motion for summary judgment, (R. 11), and grant the Commissioner's motion for summary judgment, (R. 12).

---

[1] On November 9, 2001, Jo Anne Barnhart became Commissioner of Social Security. Therefore, pursuant to Federal Rule of Civil Procedure 25(d)(1) and 42 U.S.C. § 405(g), Barnhart is automatically substituted as Defendant for Larry Massanari, whom Davis originally named as the defendant in this case.

## RELEVANT FACTS

Davis was born on April 3, 1940 and has a tenth grade education. Davis stopped working in 1978, when her employer relocated. Her husband, Arthur Davis, died on September 29, 1997.

## I. Davis' Hearing Testimony

On September 1, 1998, Davis testified before Administrative Law Judge ("ALJ") Larry Miller at a Social Security Administration ("SSA") Hearing. Davis testified that she was unable to work because of headaches and leg pain. She claimed that for the past four years she has suffered from "terrible headaches . . . just about every day . . . [for] most of the day." (R. 7, Admin. R. at 191-192, SSA Hr'g Tr.) Davis asserted that the headaches started about nine years before the hearing, around 1989, when she suffered from headaches two or three times a week. Davis claimed that the headaches are triggered by noise and worry. She further testified that medication does not help the headaches, but that a quiet place or a walk outside helps.

Davis also testified that for the past four to five years, she could not stand for more than fifteen or twenty minutes because of the pain in her legs. She also stated that her legs felt tired when she walked. Davis testified that she could walk four blocks, rest for five minutes and then walk the four blocks back home. She also maintained that going up stairs bothers her, although coming down stairs is not as bad because she sometimes goes down the stairs while sitting.

At the time of the hearing, Davis testified that she was five feet, five inches tall and weighed 180 pounds, although she was losing weight. Davis testified that she has high blood pressure and takes medication to control it. In May or June 1997, the dosage of Davis' high blood pressure medication was increased.

On a typical day, Davis walks her grandson to school, reads and cleans for about half an hour. Davis does not lift or carry things at home. Davis' daughter might also take her to the cleaners or grocery store.

## II. Medical Evidence

The medical evidence in this case consists of records – mainly progress notes – from Davis' outpatient visits to Cook County Hospital ("CCH"), the report of consulting physician H. Stamboli, M.D. and the report of non-examining reviewing physician Mohammad Irshad, M.D.

Davis began treatment as an outpatient at CCH in 1994. CCH progress notes from 1994 to 1997 show hypertension, which had been largely controlled with medication during the three year period. In February and June 1994, Davis reported that she "fe[lt] well." (R. 7, Admin. R. at 127, Feb. 25, 1994 CCH Notes; *Id.* at 124, June 10, 1994 CCH Notes.) In September 1994, Davis reported that she was "doing ok" but complained of some precordial pain which the treating physician noted was "atypical for angina." (*Id.* at 121, Sept. 9, 1994 CCH Notes.) Davis continued to report that she was "feeling fine" in December 1994 and March 1995. (*Id.* at 116, Dec. 9, 1994 CCH Notes; *Id.* at 115, Mar. 3, 1995 CCH Notes.) In May 1995, Davis was diagnosed with tension headaches at the CCH emergency room, and CCH progress notes from later that month show that Davis had run out of medication. In June 1995, doctors increased her blood pressure medication dosage and, by the end of the month, she reported feeling "pretty good." (*Id.* at 112, June 30, 1995 CCH Notes.) In October 1995, Davis reported no subjective complaints except occasional lightheadedness. In February 1996, Davis reported suffering occasional headaches. In May 1996, December 1996, April 1997 and June 1997, Davis reported no subjective complaints. In April 1997, however, Davis was diagnosed with hypertensive

3

retinopathy, and the treating professional assessed that Davis' hypertension was not controlled. By her June 1997 examination, however, Davis' hypertension was controlled. In September 1997, Davis had no subjective complaints, except for a mild cough, and her hypertension was controlled. The treating professional also noted trace edema of the extremities. In December 1997, Davis reported no subjective complaints, but her blood pressure was slightly high and she was reminded to decrease her salt intake and to take her medications regularly.

On November 13, 1997, Dr. H. Stamboli performed a consultative examination of Davis at the request of the SSA. Davis complained of headaches, calf tenderness and knee pain. Upon examination, Dr. Stamboli noted mild pain and crepitation on movement of the knees although range of motion was not limited. He also noted grade I changes in the eyes. Dr. Stamboli's impressions were: (1) "long history of headaches, appears to be stress related"; (2) "hypertension. Takes medications but blood pressure is 160/105 . . . I cannot find any findings of heart failure . . . From her history, I noted patient has fatigue and shortness of breath upon moderate exercise. No palpitations or chest pain"; (3) "pain in knees which is most probably secondary to osteoarthritis"; and (4) "moderate obesity." (*Id.* at 88, Stamboli Report.)

On December 15, 1997, at the request of the SSA, Dr. Mohammad Irshad assessed Davis' residual functional capacity and concluded that she was capable of performing medium work. As evidence for his conclusion, Dr. Irshad noted Davis' history of tension headaches, hypertension, height and weight and osteoarthritis with unlimited range of motion.

Davis submitted additional CCH records to the ALJ prior to the September 1998 hearing. Progress notes from an April 17, 1998 outpatient visit note that Davis' hypertension was not controlled. Davis' medication was increased and she was instructed to decrease her salt intake.

4

Additional CCH records for the period from January 1999 through November 1999 were submitted to the Appeals Council on November 29, 1999, after the ALJ's denial of benefits and before the Appeals Council's decision regarding review. Davis' counsel argued that the records supported Davis' complaints of headaches, hypertension and knee pain. The additional records show that Davis complained of headaches in February 1999, March 1999, April 1999 and November 1999. On April 8, 1999, a CCH physician prescribed Tylenol #3 for severe headache pain. Progress notes from April 30, 1999 show that Davis' headache pain was decreased by Zoloft. A CT scan of the head was negative. Davis also continued to be treated for hypertension during this period. Finally, Davis complained of knee pain, and an x-ray examination found mild degenerative joint disease, a form of arthritis.

### III. ALJ's Decision

On February 17, 1999, ALJ Larry Miller determined that, for the purpose of widow's insurance benefits and supplemental security income, Davis was not disabled. In reaching this conclusion, the ALJ engaged in the five-step analysis required by SSA regulations. 20 C.F.R. §§ 416.920, 404.1520. The ALJ stopped at step two of the analysis, finding Davis not disabled because she "does not have an impairment or combination of impairments which significantly limits her ability to perform basic work-related activities." (R. 7, Admin. R. at 17, ALJ Decision.) Although the ALJ concluded that Davis had a history of high blood pressure, he did not find Davis' complaints of headaches and leg pain to be credible or supported by clinical signs and findings. Furthermore, he found Davis' claims inconsistent with treatment notes that listed no complaints of any severe impairments.

5

The ALJ concluded that Davis' testimony regarding headaches and leg pain was not convincing. Specifically, the ALJ found Davis' allegations of headaches not credible because "she does not seem haggard or effete and the consulting doctor described her as well developed and well nourished." (*Id.* at 16, ALJ Decision.) The ALJ also noted that although Davis began taking medication in July 1998, it was for shoulder pain and not headaches. (*Id.*) Finally, the ALJ observed that progress notes reported that Davis "feels well" and concluded that "there is nothing in the medical records of any real complaints about headaches." (*Id.*)

With regard to the leg pain, the ALJ concluded that Davis' complaints were not credible because they were not "narrowed to any degree in the medical records and the pain seems to be wandering." (*Id.*) The ALJ found a history of high blood pressure, but also concluded that "the evidence of record does not establish that the claimant's history of high blood pressure would have more than a minimal effect on her ability to perform a full range of heavy work and considering her age, education and work experience." (*Id.*)

Following the ALJ's decision, Davis requested review by the Appeals Council. In addition to the evidence considered by the ALJ, the Appeals Council received the additional CCH records from March 1999 through November 1999. On June 21, 2001, the Appeals Council denied Davis' request for review, concluding that the additional evidence did not provide a basis for changing the ALJ's decision. ALJ Miller's decision thus became the Commissioner's final decision.

Currently before this Court are Davis' and the Commissioner's motions for summary judgment. On appeal, Davis contends that the ALJ's decision to deny her benefits was not supported by substantial evidence. In addition, Davis argues that the ALJ erred as a matter of

6

law in determining that Davis did not have severe impairments, and that the Appeals Council also erred as a matter of law in finding that the newly submitted evidence was not material or not a basis for changing the ALJ's decision. For the reasons set out herein, we deny Davis' motion and affirm the Commissioner's decision.

## LEGAL STANDARDS

The standard of review for final decisions of the Commissioner (here the ALJ's decision) in federal benefits cases is deferential. *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). The Social Security Act establishes that the Commissioner's findings of fact are conclusive if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1972) (citation and quotation omitted). In other words, the ALJ's findings must be supported by more than a mere scintilla of the evidence. *Id.* The Commissioner is responsible for weighing the evidence, resolving conflicts and making independent findings of fact. *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (citation omitted). As such, this Court may not "decide the facts anew, re-weigh the evidence or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled." *Id.* at 434-35 (citation omitted).

To receive disability benefits, a claimant must be "disabled" as defined by the Social Security Act. An individual is disabled if he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 416(i). Social Security regulations require the ALJ to engage in a five-step inquiry to determine whether a claimant is disabled. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ must

inquire: (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) if the claimant does not suffer from a listed impairment, whether she can perform past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. 20 C.F.R. § 404.1520. If the ALJ finds the claimant disabled or not disabled at any step, the ALJ will not proceed to the next step of the review.

The Court's review of the Appeals Council's denial of review is also limited because the Appeals Council's refusal to review the ALJ's decision is discretionary. *Eads v. Sec'y of the Dep't of Health and Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993) (citation omitted). We can reverse the Appeals Council's decision if it rests on a mistake of law, such as an erroneous determination that newly submitted evidence was not material to the disability determination. *Id.* at 817 (citing *Nelson v. Bowen*, 855 F.2d 503, 506-08 (7th Cir. 1988)).

The issues set forth in this case are: (1) whether the ALJ's decision at step two that Davis did not have a severe impairment and thus was not disabled was supported by substantial evidence; and (2) whether the Appeals Council erred as a matter of law in finding that the newly submitted evidence was not material and denying review.

## ANALYSIS

### I. The ALJ's Decision was Supported by Substantial Evidence

Davis argues that substantial evidence does not support the ALJ's finding at step two that Davis does not have a severe impairment. Specifically, Davis contends that the ALJ erroneously discounted the opinions of Drs. Stamboli and Irshad and the CCH medical records and made his

8

own medical assessments. Furthermore, Davis contends that the ALJ erred by considering Davis' hearing testimony and appearance in concluding that Davis did not have a severe impairment.

To show an impairment, the claimant is required to establish a physical or mental impairment with "medical findings consisting of signs, symptoms, and laboratory findings, not only [the claimant's] statement of symptoms." 20 C.F.R. § 416.908. The ALJ weighs this evidence and when, as in this case, he denies benefits, he must build a logical bridge from the evidence to his conclusion. *Dixon*, 270 F.3d at 116 (citation omitted). The ALJ need not discuss his reasons for rejecting every piece of evidence, but "he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's decision." *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) (citation omitted). If the ALJ fails to address relevant evidence, the record will disclose that he was improperly "playing doctor," which will likely be grounds for reversal. *Diaz*, 270 F.3d at 1177 (citation omitted). The ALJ may, however, reject a doctor's opinion "if it appears to be based on a claimant's exaggerated subjective allegations." *Dixon*, 270 F.3d at 1178. *See also Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993) ("Where diagnoses are not supported by medically acceptable clinical and laboratory diagnostic techniques, this court need not accord such diagnoses great weight.") (citation omitted).

In this case, the ALJ properly weighed the evidence presented by Drs. Stamboli and Irshad and the CCH medical records. The ALJ's examination of the evidence led him to conclude, in accord with the medical evidence, that Davis had a history of hypertension. The ALJ's evaluation also led him to reject Dr. Stamboli and Dr. Irshad's diagnoses of headaches and knee pain. The ALJ did not, however, "play doctor," or ignore relevant evidence. He properly

9

discounted Dr. Stamboli's opinion of headaches as it was a diagnosis based on subjective complaints, or an attempt "to explain the claimant's alleged symptoms." (R. 7, Admin. R. at 16, ALJ Decision.) The ALJ also properly discounted Dr. Irshad's opinion of tension headaches as it was based on Dr. Stamboli's diagnosis, which itself was founded on Davis' subjective complaints. (*Id.*) The ALJ also noted that the CCH records repeatedly stated that Davis was feeling well, and that there were no real complaints about headaches in the medical records. (*Id.*) Further discrediting the doctors' opinion and Davis' allegations of headaches, the ALJ also noted that the only pain medication taken was for shoulder pain. (*Id.*) Finally, the ALJ did not find Davis' testimony regarding headache pain to be credible. In concluding that the allegations were not credible, the ALJ noted the lack of complaints in the CCH records, that Davis did not seem "haggard or effete" and that "the consulting doctor described her as well developed and well nourished."[2] (*Id.*)

Similarly, the ALJ did not "play doctor" in rejecting Davis' allegations of knee pain. The ALJ noted that upon a physical examination of Davis, Dr. Stamboli opined that there was "mild pain and crepitation on movement of the knees but the range of motion was not limited." (*Id.* at 15.) Dr. Stamboli diagnosed "pain in the knees which is *most probably* secondary to

---

[2] Davis argues that SSR 85-28 directs the ALJ to consider only objective medical evidence at step two and that the ALJ's observation of Davis' appearance is not medical evidence that could rebut the medical evidence in the record. (R. 11, Pls. Mot. for Summ. J. at 9-12.) SSR 85-28 instructs: "At the second step of the sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28, 1985 WL 56856, at *4 (S.S.A. 1985). The ALJ is instructed to evaluate, not simply accept, medical evidence. ALJ Miller followed SSR 85-28 by critically evaluating the doctors' opinions and the conflicting CCH records. He did not discount the headache diagnosis simply by commenting on Davis' appearance at the hearing, as Davis seems to suggest. (R. 11, Pls. Mot. for Summ. J. at 11.) Therefore, Davis' argument is not supported by the record.

10

osteoarthritis (emphasis added)." (*Id.* at 88, Dr. Stamboli's Report.) The ALJ discounted Stamboli's indefinite opinion, and Dr. Irshad's which was based upon it, because the "complaints [were] not narrowed to any degree in the medical records and the pain seems to be wandering. At the hearing, it was allegedly all over the leg . . . before the consulting doctor, the claimant located the pain in her knees." (*Id.* at 16, ALJ Decision.) The ALJ also noted that the body part recently cited for pain medication was the shoulder, not the knees. (*Id.*) Therefore, because the diagnosis appears to be based on Davis' subjective complaints, the ALJ could properly discount it.[3]

The ALJ also properly questioned Davis on her daily activities. Such inquiries are essential to determining whether a claimant's alleged impairment(s) significantly limit her ability to perform basic work activities.[4] In this case, Davis acknowledged that she could walk eight blocks with a five-minute break, read and clean. Thus, she failed to show how her alleged impairment(s) significantly limited her ability to perform basic work activities.

In short, the ALJ's findings, gleaned from his weighing of the medical evidence, were supported by substantial evidence. The ALJ properly concluded that the medical evidence did

---

[3] The ALJ also rejected Dr. Stamboli's diagnosis of moderate obesity, noting that she weighed 195 pounds at the time of the exam but weighed only 180 pounds at the time of the hearing. (R. 7, Admin. R. at 16, ALJ Decision.) The ALJ's conclusion was proper considering that Davis weighed significantly less than the Listing requirement for obesity – 266 pounds – for a woman of her height. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 9.09 (Table II–Women) (superseded 1999).

[4] Basic work activities include physical functions such as walking, standing and sitting, as well as sensory functions and the ability to carry out simple instructions and to use judgment. *See* 20 C.F.R. § 404.1521.

not establish an impairment or a combination of impairments that significantly limited Davis' ability to perform basic work activities.

## II. The Appeals Council Did Not Err in Denying Review

Next, Davis argues that the Appeals Council erred as a matter of law in determining that the newly submitted evidence was not material or not a basis for changing the ALJ's decision. The additional medical evidence submitted to the Appeals Council included EKG reports and an x-ray of the right knee showing degenerative joint disease. This Court will reverse the Commissioner's final decision if the Appeals Council's refusal to review rests on a mistake of law, such as the determination that newly submitted evidence was not material. *Eads*, 983 F.2d at 817. Evidence is material if there is a "reasonable possibility" that it would change the ALJ's decision. *Nelson*, 855 F.2d at 506 (citation omitted). In the first instance, Davis has not explained how her allegedly abnormal EKGs relate to the impairments presented to the ALJ. The finding of "mild degenerative joint disease" does, however, support Dr. Stamboli's diagnosis of "pain in knees which is most probably secondary to osteoarthritis." (R. 7, Admin. R. at 176, Radiology Report; *Id.* at 88, Stamboli Report.)

This Court finds that the new evidence is not material because there is not a "reasonable possibility" that it would have changed the ALJ's decision. Even if the ALJ had made a finding of mild arthritis, this impairment, along with hypertension, likely would not have changed the ALJ's decision at step two that the impairments were not severe. ALJ's have found that claimants with arthritis, hypertension and other maladies do not have severe impairments, and courts have affirmed these decisions. *See, e.g., Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) (although claimant clearly suffered from diabetes, high blood pressure and arthritis, he

failed to show that these impairments were severe); *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994) (ALJ's determination that claimant's impairments, including osteoarthritis and high blood pressure, were not medically severe was supported by substantial evidence). Therefore, we decline to remand this case for a new hearing based on the newly submitted evidence, or, in the alternative, reverse the Commissioner's decision.

## CONCLUSION

Although we sympathize with Davis' complaints, we cannot, in accordance with the applicable standards, simply reweigh all the evidence. Instead, we must determine if the ALJ's decision was supported by substantial evidence and as indicated herein we conclude that it was. For the reasons set forth in this opinion, we deny Davis' motion for summary judgment, (R. 11), and grant the Commissioner's motion for summary judgment, (R. 12). The Clerk of the Court is instructed, pursuant to Federal Rule of Civil Procedure 58, to enter judgment in favor of Defendant.

ENTERED:

Judge Ruben Castillo
United States District Court

**Dated: February 20, 2002**